THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
NICHOLAS WILEY, Appellant.

Fourth Department, November 10, 1986

**APPEARANCES OF COUNSEL**

*Gerald T. Barth (James P. Maxwell* of counsel), for appellant.

*Richard A. Hennessy, Jr., District Attorney (John A. Cirando* and *Maureen A. MacPherson* of counsel), for respondent.

## OPINION OF THE COURT

SCHNEPP, J.

Although defendant raises several issues on this appeal from a judgment convicting him of burglary in the first degree (Penal Law § 140.30 [2]), we address primarily his contention that he was denied the effective assistance of counsel. We conclude that the ineffectiveness of his assigned counsel is clearly demonstrated on the record and that his conviction must be reversed and a new trial ordered.

Defendant was convicted under a multicount indictment which charged that on June 7, 1983 he entered the home of 66-year-old Doris Lando, struck her several times in the head with a hammer, cut her telephone line and stole cash and other property from her person and house. The victim was seriously injured in the attack.

The facts adduced at trial reflect that the victim was slightly acquainted with defendant prior to the attack. She identified him out of a lineup and at trial as her assailant. The other possible witness to the attack, John Dilderback, an itinerant handyman known to the victim as "Stretch" and employed by her to fix a leak in her roof, was not called to testify at the trial. Defendant denied any knowledge of the incident and testified in his own behalf that he was at a friend's house when the victim was attacked and his friend's mother, Ruby Sewell, testified in support of his claim.

The victim testified that when she was attacked she screamed for Stretch who was then working on her roof and as he came into the house defendant ran out the back door. Stretch called the police who, after they interviewed him at the scene, began a search for defendant whom they located and arrested that evening.

The theories of the defense were misidentification and alibi. The only evidence of defendant's guilt came from the testimony of the victim. The testimony of defendant and Ruby Sewell that defendant was at Sewell's house around the time of the crime clearly presented an alibi defense. Alibi testimony does not have to show that it would have been impossible for the defendant to have committed the crime and need not cover the whole time of the transaction in question; it is enough that it renders guilt merely improbable *(People v*

*Barbato,* 254 NY 170, 178-179). If defendant produces proof in support of a plausible alibi he is entitled to an alibi charge *(see, People v Bacon,* 84 AD2d 680; *People v Bruno,* 77 AD2d 922). When sufficient evidence of alibi is presented, it "is treated for practical purposes the same as a statutory 'defense' under subdivision 1 of section 25.00 of the Penal Law * * * Thus, the People have the burden of disproving an alibi beyond a reasonable doubt, and a Judge must unequivocally state that burden in the jury charge" *(People v Victor,* 62 NY2d 374, 377-378). If the alibi charge is properly requested and not given or the failure to include a warranted alibi charge is duly protested so that the issue is preserved for appellate review as a matter of law (CPL 470.05 [2]), the conviction should be reversed *(see, People v Holt,* 67 NY2d 819; *People v Victor,* 62 NY2d 374, *supra; see also, People v Grant,* 84 AD2d 793). Here, defense counsel failed to request an alibi instruction or to object to the charge and thus failed to preserve this issue for our review as a matter of law *(see, People v Thomas,* 50 NY2d 467; *People v Spruill,* 103 AD2d 785). Although the conviction could be reversed in the interest of justice (CPL 470.15 [6] [a]) if the circumstances of this case warranted, we need not reverse as a matter of discretion since we hold that on these facts defendant was denied effective assistance of counsel. Defense counsel's error, which cannot be explained by reference to any discernible trial strategy, has led directly to a waiver of reversible error and denied defendant meaningful representation of counsel *(see, e.g., Commonwealth v Nauman,* 345 Pa Super Ct 457, 498 A2d 913; *Commonwealth v Brunner,* 341 Pa Super Ct 64, 491 A2d 150). Moreover, if the alibi charge had been given, in our view, there is a reasonable probability of a different result inasmuch as the evidence of guilt is not overwhelming.

At the trial, defense counsel called a licensed New York State private investigator who testified that he had been requested by counsel to conduct an investigation concerning "Stretch". In the absence of the jury, defense counsel offered to prove Stretch's identity, his Syracuse Police Department criminal record and then whereabouts in Watertown. It would appear from statements made by defense counsel at the sentencing that he had then made known to the court that Stretch was known by two separate names and had two separate "rap sheets", that a pending Onondaga County criminal charge then existed, and that Stretch "was in fact still

within the jurisdiction of this particular trial court, to wit, Jefferson County."

The prosecutor, who opposed the offer of proof as immaterial since Stretch had not been called as a witness, advised the court that he had no idea where the witness was and indicated that an Investigator Stapleton of the District Attorney's office had made unsuccessful efforts to locate Stretch and subpoena him for the trial. The prosecutor indicated that Stretch informed him, when they met at the Grand Jury, that he was from Montana, had grown up there, and had only been in Syracuse a relatively short period of time. Assuming, however, that the prosecutor was unaware of this witness' whereabouts until defense counsel revealed that he had located him in Watertown, no attempt was then made by the District Attorney to subpoena him, notwithstanding the trial court's offer to adjourn the trial for the purpose of calling Stretch as a witness. Since defense counsel did not seek an explanation for the prosecutor's failure to follow up on his information and subpoena Stretch, we can only speculate as to the prosecutor's motives in not producing Stretch as his witness. In this regard, we note that an affidavit made in opposition to defendant's omnibus motion avers that defendant and "eyewitness John Dilderback may have together burglarized a music store in Syracuse earlier [in 1983]" and that the police had information predating the crime that "the defendant and several other youths, including one named 'Stretch' had plotted to rob an old woman who lived in the 300 block of Kellogg Street".

Although defense counsel considered Stretch a key witness who had identified defendant to the police and was frustrated in his ill-conceived efforts to impeach his credibility, he inexplicably failed to request an unfavorable inference charge when the prosecutor did not produce Stretch or explain the efforts made to obtain his testimony.

It is clear that Stretch could have provided valuable testimony which most likely would have corroborated the victim's identification of the defendant even though his credibility may have been subject to impeachment because of his alleged criminal activity. Stretch was in fact a key prosecution witness who apparently supplied the police with information leading to defendant's arrest. The fact that defense counsel had located Stretch within New York State, where the prosecutor could have subpoenaed him, established the control necessary to have entitled defendant to a missing witness

charge upon the failure of the prosecutor to follow up on this information and endeavor to produce Stretch as a witness *(see, People v Jackson,* 122 AD2d 566; *People v Dillard,* 96 AD2d 112). Defense counsel apparently did not understand that he could thus compensate for Stretch's absence. Instead, he wasted his efforts on an attempt to collaterally attack Stretch's credibility, which the court properly refused to permit. His aborted effort to impeach Stretch *in absentia* and his failure to request a missing witness charge constituted serious mistakes. The record reflects that Stretch was an eyewitness who could possibly identify the defendant as the person fleeing from the victim's house. If the jury had been instructed that it could presume that his testimony would not support the victim's account, an acquittal might have resulted.

Prior to the trial the court held a *Sandoval* hearing at which the prosecutor named four prior acts that he wished to inquire into: a petit larceny incident in 1975, an assault in the third degree incident in June 1976, and an attempted rape conviction of a deaf mute female which was coupled with a guilty plea to sexual abuse of defendant's seven-year-old brother. The court did not allow the 1975 and 1976 incidents but did grant the prosecution permission to question on the attempted rape conviction and the concomitant guilty plea of sexual abuse to the extent of asking the defendant whether he had been convicted of a crime and whether that conviction satisfied one other crime that he had committed. He was not permitted to inquire as to the nature of the crimes underlying the convictions. Defense counsel, however, on his direct examination of defendant, after questioning him as to whether he had previously been convicted of a crime, directly elicited from defendant an answer that the crime consisted of attempted rape for which he served time in State prison. This admission was obviously prejudicial and would not have been adduced except for defense counsel's questioning. Counsel's error in asking defendant about the nature of the prior conviction, standing alone, might not rise to the level of ineffective assistance of counsel, but when considered together with the more egregious mistakes of failing to request either an alibi charge or a missing witness charge or to preserve the alibi issue for review as a matter of law reversal is mandated.

"[D]espite undoubtedly sincere efforts on his part, assigned defense counsel failed to protect the interests of his client." *(People v Brown,* 45 NY2d 852, 853.) In *People v Baldi* (54

NY2d 137), the Court of Appeals considered the right to the effective assistance of counsel which is guaranteed by both the Federal and State Constitutions (US Const 6th Amend; NY Const, art I, § 6) and concluded that the "most critical concern in reviewing claims of ineffective counsel is to avoid both confusing true ineffectiveness with mere losing tactics and according undue significance to retrospective analysis." *(People v Baldi, supra,* p 146.) The test to be applied is that "[s]o long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met" *(People v Baldi, supra,* p 147). In *Strickland v Washington* (466 US 668), the Supreme Court formulated a two-prong test for evaluating whether defendant's right to counsel has been denied under the Federal Constitution. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *(Strickland v Washington, supra,* p 687.) "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *(supra,* p 694). Defense counsel's errors with respect to the alibi and missing witness charges, added to the failure to take advantage of a favorable *Sandoval* ruling, make it apparent that defendant was denied the effective assistance of counsel under both the *Baldi* and *Strickland* standards.

We have considered the other issues raised by defendant and find them to be without merit. We note, however, that although the prosecutor's remarks on summation were artless and inappropriate at times, they were not so prejudicial as to deprive defendant of a fair trial.

Accordingly, the judgment should be reversed and a new trial granted.

DILLON, P. J., CALLAHAN, DOERR and BOOMER, JJ., concur.

Judgment unanimously reversed, on the law and facts, and new trial granted.