■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KENNETH L. NEIL, Appellant. [733 NYS2d 528] —Carpinello, J. Appeal from a judgment of the County Court of Rensselaer County (McGrath, J.), rendered May 8, 1998, upon a verdict convicting defendant of the crimes of rape in the first degree (two counts), sexual abuse in the second degree (two counts), sodomy in the first degree and sodomy in the second degree.

Defendant was originally charged in a 20-count indictment with various sex-related offenses, including rape, sexual abuse and sodomy, stemming from his alleged sexual contact with

three foster girls in his care between August 1995 and April 1996 (hereinafter victim A [born in August 1984], victim B [born in January 1984] and victim C [born in March 1981]). Of the 12 counts ultimately submitted to the jury, he was found guilty on six counts (two counts each of rape in the first degree and sexual abuse in the second degree and one count each of sodomy in the first degree and sodomy in the second degree). Sentenced to an aggregate prison term of 39½ to 81 years, defendant appeals. Suffice it to say, defendant's guilt was primarily dependent on the testimony of the victims, each of whose credibility was seriously undermined at trial. Upon our review of the 12 charges submitted to the jury and its resulting verdict, one thing is clear, namely, despite defense efforts to attack their credibility, the jury fully credited the testimony of victims A and B as it convicted defendant on all counts pertaining to them (counts 1, 3, 4 and 8). With respect to victim C, the jury obviously disregarded much of her testimony as evidenced by defendant's acquittal on six of the eight counts pertaining to her. Nonetheless, the jury apparently believed her when she testified that defendant raped her on March 4, 1996 and forced her to perform oral sex on him on April 26, 1996.

We have reviewed the evidence concerning each count on which defendant was convicted and find that it is not legally insufficient nor was the verdict against the weight of the evidence (*see, People v Bleakley*, 69 NY2d 490, 494-495). Moreover, while the credibility of each victim was attacked on cross-examination, we are unable to conclude that their testimony was incredible as a matter of law such that it should have been totally disregarded as being without evidentiary value (*see, People v Stroman*, 83 AD2d 370). Said differently, "our review of the record does not reveal that the testimony of the victim[s] was manifestly untrue, physically impossible or contrary to human experience, thereby prompting us to reject it as a matter of law" (*People v Wilson*, 256 AD2d 637, 638, *lv denied* 93 NY2d 880). Rather, the believability of each victim was properly a matter for the jury to determine (*see, People v Meehan*, 229 AD2d 715, 717, *lv denied* 89 NY2d 926), and the jury having spoken on this issue, we find no reason to disturb its decision.

With respect to the two counts on which defendant was found guilty concerning victim C (counts 10 and 17), although we agree with defendant that certain errors occurred during the trial, we nonetheless conclude that reversal of these counts is not warranted. During cross-examination of this victim, defense counsel successfully impeached her with a prior inconsistent statement. Specifically, it was established that, al-

though she testified on direct examination that she had first reported defendant's sexual abuse to a foster mother, she testified before the Grand Jury that she had first reported it to a teacher on May 1, 1996, i.e., four days after the last incident charged in the indictment. Upon being pressed on cross-examination concerning this inconsistency, victim C stood by her Grand Jury testimony; that is, she testified that, after an April 26, 1996 incident of being raped, sodomized, sexually assaulted with a broom and forced to perform oral sex on defendant, she reported "what was going on" to her math teacher on May 1, 1996 and asked that teacher to take her to a doctor because she was in pain.[1] She further testified on cross-examination that she was in fact examined by a physician at a specific location on this date and that this physician informed her that she might not be able to have children because of the injuries she sustained from the broom.

At the close of the People's proof, defense counsel requested a missing witness charge with regard to the teacher and the examining physician. In opposing the motion, the prosecutor argued that there was no proof that these witnesses actually existed, all but conceding that he never made any effort to find out "who these people [were]."[2] In our view, while defendant certainly met his burden of establishing the right to a missing witness charge with regard to the physician who allegedly examined victim C and documented injuries consistent with her being sexually assaulted with a broom (*see, People v Paulin*, 70 NY2d 685; *see generally, People v Gonzalez*, 68 NY2d 424, 427; *compare, People v Wright*, 192 AD2d 875, *lv denied* 82 NY2d 809), defendant's acquittal of aggravated sexual abuse in the first degree (the only count pertaining to victim C's allegation that he inserted a broom into her vagina) renders this error academic.

Moreover, defendant was not otherwise entitled to a missing witness charge with respect to the teacher as he failed to demonstrate that she would have offered relevant testimony on a *material* issue pending in the case (*see, People v Bennett*, 169

---

**1.** Ultimately, the jury only credited that part of victim C's testimony concerning the April 26, 1996 incident wherein she claimed that defendant forced her to perform oral sex on him (count 17). It acquitted defendant on counts 16, 18 and 19, charging rape, sodomy and aggravated sexual abuse, respectively. Contrary to defendant's contentions, we are unable to conclude that any aspect of the jury's verdict is totally irrational or indicative of a compromise.

**2.** Notably, the prosecutor was aware that victim C allegedly told a teacher about the abuse on May 1, 1996 and that she was allegedly examined by a physician because she so testified before the Grand Jury.

AD2d 369, 374-375, *affd* 79 NY2d 464; *People v Clark*, 128
AD2d 270; *cf.*, *People v Kitching*, 78 NY2d 532; *People v
Sergeant*, 244 AD2d 702; *People v Gladden*, 180 AD2d 747;
*People v Wiley*, 120 AD2d 66). To be sure, the real purpose of
defendant's request for a missing witness charge was to dem-
onstrate that either victim C in fact never reported the alleged
abuse to this teacher, as she claimed before the Grand Jury
and again at trial, or that this teacher does not even exist. Nei-
ther purpose, however, speaks directly to the issue of guilt or
innocence; rather, it pertains solely to this victim's credibility,
itself a collateral matter (*see, People v White*, 228 AD2d 209, *lv
denied* 88 NY2d 1072; *see also, People v Wilson*, 256 AD2d 637,
*supra*). In addition, we note that defense counsel fully exploited
the absence and perceived nonexistence of this witness during
his closing statement to the jury (*see, People v Sykes*, 151 AD2d
523, *lv denied* 74 NY2d 820).

The second problem arising at trial concerned an apparent
conversation between victim C and an Assistant District At-
torney during a crucial part of her cross-examination. The rec-
ord reveals that a potential *Brady* problem arose during the
cross-examination of victim C, prompting County Court to
question her outside the presence of the jury. During the court's
questioning, a break was taken because victim C was crying. It
was during this break that the conversation with the Assistant
District Attorney allegedly took place. However, on this record,
we are unable to make a determination as to whether any pros-
ecutorial misconduct in fact took place thus warranting
reversal of the verdicts on counts 10 and 17 (*compare, People v
Robinson*, 190 AD2d 697, 698).

While it is clear that victim C was escorted into a nearby of-
fice during the break by an unknown woman and proceeded to
converse with this woman, the victim told County Court, in
questioning outside the presence of the jury, that she "did not
talk about anything that went on in this courtroom" during the
conversation.[3] Subsequent responses from victim C, however,
reveal that she did in fact discuss her testimony, albeit in a
minor way. According to the victim, she expressed concerns to

---

3. Defendant asserts that this woman was in fact an Assistant District
Attorney who was sitting in the back of the courtroom during the trial and
points out that the District Attorney's office is right next door to the
courtroom. According to defense counsel, he saw this particular Assistant
District Attorney "on the move" when victim C left the witness stand, thus
prompting him to request on the record that the victim "not be where any-
body is from the District Attorney's office," mentioning the subject Assistant
District Attorney by name. In fact, County Court attempted to avert any
such contact, apparently to no avail.

this woman that defense counsel was asking very personal questions. Victim C could not remember, however, if the woman responded to these concerns during their conversation.

While the sequence of events surrounding this matter are suspect,[4] and this Court in no way condones unauthorized contact between any member of the District Attorney's office and a prosecution witness during that witness's trial testimony, we cannot say with certainty that victim C's changed answers and claimed failure of memory were the result of improper coaching by this Assistant District Attorney in order to rehabilitate her or aid the People's case generally (*cf., id.*). Notably, defense counsel did not request that the Assistant District Attorney be questioned about the content of the alleged discussion (*see generally, People v Branch,* 83 NY2d 663; *People v Rodriguez,* 225 AD2d 396, 397, *lv denied* 89 NY2d 1015), and the answers given by victim C concerning what transpired did not suggest that she was coached on any material issue. Additionally, defense counsel cross-examined this victim about the complete alteration of her testimony when she resumed testimony before the jury (although the jury was not informed of the interim conversation between her and the Assistant District Attorney [*compare, People v Thanh Giap,* 273 AD2d 54, *lv denied* 95 NY2d 872]).

Finally, to the extent preserved for our review, defendant's remaining contentions in support of reversal are rejected.

Cardona, P. J., Mercure, Crew III and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.

---

4. When the victim resumed County Court's questioning after apparently conversing with the Assistant District Attorney, she completely changed her testimony concerning the matter at hand.