OPINION OF THE COURT
Ralph A. Fabrizio, J.
The issue is whether the court should strike the testimony of the complaining witness from the trial record based on the prosecutor’s unauthorized review with the witness of prior grand jury testimony and information in other documents while that witness was still on cross-examination. The defendant seeks this sanction since, inter alia, cross-examination had to be reopened because the People provided the witness’s grand jury minutes to the defense only after the witness had completed his trial testimony. The court denied an earlier defense request to strike the testimony based solely on that serious discovery violation, and ordered the lesser sanction of reopened cross-examination. The People not only argue that they were legally permitted to re-prep their own witness prior to the reopened cross-examination, but claim they had “an affirmative obligation to do so.” The court considers it unacceptable for the People to have had unauthorized, substantive conversations with this witness under these circumstances. However, in this non-jury trial, the defense application to strike the witness’s testimony is denied.
Defendant, a retired New York City Police Officer and retired firefighter, was arrested on January 29, 2014 after attending a midwinter hockey game held outdoors at Yankee Stadium. It is alleged that he and others, who have never been identified or apprehended, assaulted a private security guard working at the stadium. The complaining witness was taken to a hospital and admitted. His orbital socket was shattered, and he underwent extensive reconstructive surgery.
Defendant waived a jury, and a non-jury trial began before this court on Monday, November 28, 2016. The People called the complaining witness to testify. The witness underwent extensive direct, cross-, redirect, and re-cross-examination. During direct examination, the witness was asked about a sworn complaint he signed to initiate a civil lawsuit against defendant and others based on the same incident. The complaint named several perpetrators, including some listed as “John Does One through Ten.” The witness explained on direct *503 examination that he had not read the pleading before he swore to it, and he never alleged he was assaulted by as many as 10 perpetrators. He testified he fired the attorney who drafted that pleading after discovering this error and hired a new civil attorney. The witness finished his testimony that day and was excused.
The next day, the People disclosed they had not turned over the minutes of the complaining witness’s testimony before the grand jury. The court ordered the People to immediately provide those minutes to defense counsel. They totaled 28 pages. The court adjourned the case until the afternoon to allow counsel time to review the minutes and consult with his client prior to requesting a remedy.
That afternoon, counsel moved to strike the witness’s testimony based on the discovery violation. He argued, inter alia, that the defendant had been prejudiced because of what he characterized to be substantive inconsistencies between the witness’s trial testimony and his grand jury testimony. He also argued that the testimony before the grand jury was far more detailed than the trial testimony. The People opposed the motion to strike and suggested that the only sanction should be to allow their witness to be called for a reopened cross-examination. Counsel argued that remedy was inadequate, and insisted that the testimony be stricken. The court denied that application. Counsel then moved for a mistrial with prejudice, raising most of the same arguments he made in the application to strike the testimony. The court found the People’s failure to make timely disclosure of the witness’s prior testimony was not willful, although it was extremely careless, and denied the application for a mistrial with prejudice. At that point, defendant asked to reopen cross-examination of the complaining witness. The People contacted the complaining witness and he agreed to return to court the next day.
On Wednesday, November 30, 2016, prior to the reopened cross-examination, the People made a motion in limine seeking to restrict the scope of the reopened cross-examination to questions about the prior grand jury testimony. In particular, the People argued that defendant should not be permitted to cross-examine the witness about a second sworn document, called an “affidavit of merit,” filed by his second attorney in his civil case in connection with a motion for summary judgment. In that document, the complaining witness once again referred to the unidentified assailants as “John Does One through Ten.” *504 Defense counsel represented he had not received that document until after the complaining witness testified. He turned it over to the People on Tuesday, November 29, 2016, in an effort to have them “correct the record” about a purported misrepresentation made by the complaining witness about his lack of awareness of the “John Does One through Ten” language in the complaint at the time he signed that document, and his intimation that he hired a second civil attorney to correct that mistake. The court denied the People’s motion to restrict the scope of the reopened cross-examination.
When the reopened cross-examination began, defendant asked the witness about parts of the grand jury testimony. At times, the witness seemed confused by the term “grand jury minutes.” When he was first shown the minutes, he said he had not seen them before; at other times he testified he had seen them and reviewed them. He was shown other documents, including the “affidavit of merit,” and seemed somewhat confused about what those documents were and when he had reviewed them. At one point, he said he had reviewed the “affidavit of merit” with the prosecutor after his testimony on Monday and testified that the prosecutor told him he would have to be recalled to testify about that document. The parties stipulated that this document had not been provided to the prosecutor until the day after the witness testified.
The People were permitted to do some redirect examination. However, they too seemed to confuse the complaining witness with questions about when he reviewed his grand jury testimony. The court advised the parties they should just mark the minutes for identification and have the witness begin to read them to himself and ask if he recalled seeing them at a prior time. When the witness was shown the minutes, he testified that the “first time” he saw them was “maybe last week.” The prosecutor asked, “How many times did you review the[m]?” The witness replied, “probably just once because the only reason why I recognize it is the format.” The prosecutor continued, asking the witness whether he had reviewed them “after last week.” The witness said, “I believe after appearing here on Monday.” The witness clarified that he had actually reviewed the grand jury testimony before he testified that day. The prosecutor then asked, “And you reviewed them today?” The witness responded, “this morning.”
The court excused the witness. Defendant argued that the People had no right to review the grand jury minutes with this *505 witness prior to the reopened cross-examination, particularly since they knew defense counsel intended to confront the witness about purported inconsistencies between the witness’s grand jury and trial testimony. One of the prosecutors assigned to the trial said, “Your Honor, I met with this witness the Wednesday before Thanksgiving, Friday after Thanksgiving, and reviewed the minutes ... as well on Monday morning.” The court asked, “What about today.” The prosecutor responded, Wes, we did review.”
Defendant renewed his application to strike the witness’s testimony. The other prosecutor stated, “I . . . often give witnesses copfies] of their Grand Jury minutes to review and take home with them.”1 The People asserted they have a right to provide a witness with material to review related to his testimony even after the witness has already testified and is on cross-examination. The court, sua sponte, precluded the People from any further redirect examination and told defendant he was free to ask any other questions of the witness. Defendant asked one additional question, which had nothing to do with what he had reviewed with the prosecutor before testifying that day; the witness was again excused.
The court reserved decision on the defendant’s motion to strike the witness’s testimony and asked the parties to provide brief legal submissions stating their positions. In the People’s letter submission, dated December 2, 2016, they confirmed giving the witness his grand jury minutes to review just prior to his reopened cross-examination. The People state they did not draw the witness’s “attention to any particular sections or pages of his transcript” as it was being reviewed. The People also revealed they discussed the substance of the “affidavit of merit” with the witness that morning. Specifically, they asked the witness to explain to them “the circumstances of the second filing.” The witness referred to the sworn document as a “re-motion” filed by his second lawyer “to start the case up again *506 because it had . . . been stalled.” In the defendant’s letter submission, he argued that “prepping the complaining witness during his cross-examination, in and of itself, constituted serious misconduct.” He further argues that this additional preparation “was done in an attempt to weaken and mitigate the remedy provided ... for the People’s egregious Rosario violation.” Defendant alleged he was irreparably prejudiced by these actions because they “impaire [ed] the integrity of the truth seeking function of the trial,” although defendant acknowledged “that it is impossible to know the true extent” of how the preparation affected the witness’s testimony during the reopened cross-examination. Defendant again asked that the complaining witness’s testimony be stricken.
The court agrees that in prepping the witness for a reopened cross-examination by reviewing with the witness the very material they expected the defendant would be questioning the witness about, the People violated basic rules concerning substantive conversations with one of their witnesses who has already begun testifying at a trial. The law has long-recognized that courts have broad power to restrict an attorney’s access to witnesses “before, during, and after their testimony.” (Geders v United States, 425 US 80, 87 [1976], citing Holder v United States, 150 US 91, 92 [1893].) This process is part of the court’s “power to sequester witnesses,” and it has deep, common-law roots. (See Geders v United States, 425 US 80, 86-87 [1976].) Sequestration is usually understood to mean separating witnesses from one another, or preventing one witness from hearing the testimony of another witness. In this situation, “[t]he aim of . . . the practice of sequestering witnesses ... is twofold. It exercises a restraint on witnesses ‘tailoring’ their testimony to that of earlier witnesses; and it aides in detecting testimony that is less than candid.” (Id. at 87, quoting Wigmore, Evidence § 1838 at 348 [3d ed 1940]; F. Wharton, Criminal Evidence § 405 [C Torcia ed 1972].)
The conduct at issue here involves a different type of sequestration violation. The People spoke to their own witness after the witness testified, and was about to undergo a reopened cross-examination necessitated by their failure to have disclosed the witness’s lengthy grand jury testimony before he was originally cross-examined. “Sequestering a witness over a recess called before testimony is completed serves a third purpose . . . preventing improper attempts to influence the testimony in light of the testimony already given.” (Id.) *507 This “sequestration” rule, therefore, prevents a lawyer from having a substantive conversation with an already testifying witness, including even a criminal defendant, where the defendant is in the midst of testifying and a brief recess is called. (See Perry v Leeke, 488 US 272, 281-284 [1989].) However, a judge may not order a testifying criminal defendant to be sequestered from his or her own attorney during an overnight recess, as that violates the defendant’s constitutional right to have access to counsel. (Geders, 425 US at 88-89.)
In New York, in limited circumstances, a prosecutor can be allowed to speak with a witness about substantive matters after the witness has begun to testify. However, the prosecutor must first ask the judge for permission to speak with the witness; then it is within the judge’s discretion to allow such a conversation to take place. (See e.g. People v Branch, 83 NY2d 663, 665-666 [1994]; People v Adams, 26 AD3d 265 [1st Dept 2006]; see also Matter of Isaiah D., 127 AD3d 1184, 1185 [2d Dept 2015].) The defendant should be apprised of the reasons for such an application, and have an opportunity to render an objection or seek a limitation of the scope of such a conversation. (Branch, 83 NY2d at 665-666.) The court must also ensure that adequate safeguards are in place “to preserve both the truth-seeking function of [the] trial and [a] defendant’s rights” when authorizing a substantive conversation between a prosecutor and a witness who is already testifying. (Id. at 668; see also Adams, 26 AD3d at 265; People v Clark, 139 AD3d 1368, 1370 [4th Dept 2016]; People v Cox, 297 AD2d 589 [1st Dept 2002].)
The People argue that these cases do “not hold that court permission is required” prior to their speaking with an already testifying witness about a substantive matter. Certainly, the Branch case does not say a request is mandatory. However, that was not the issue before the Court in that case. The only question was whether the trial judge made the right decision to allow such a conversation between the prosecution and their already testifying witness under the facts of that case. Branch does not support the People’s argument that it’s not only their right, but their obligation, to re-prep a witness just prior to cross-examination, no matter what the circumstances. No court decision supports such a conclusion. In fact, in People v Neil (289 AD2d 611, 615 [3d Dept 2001]), in strong language, the Court specifically said it did not “condone[ ] unauthorized contact between any member of the District Attorney’s Office *508 and a prosecution witness during that witness’s trial testimony.” Since any such conversation, whether authorized or not, can impact the “truth seeking function,” at a minimum, the factfinder must be informed about the substance of the improper conversation, and be able to factor that into a determination of the witness’s overall credibility. (See Adams, 26 AD3d at 265; see also People v Delpilar, 293 AD2d 365 [1st Dept 2002]; People v Esquilin, 236 AD2d 231 [1st Dept 1997]; People v Rodriguez, 225 AD2d 396, 397 [1st Dept 1996].)
Significantly, there are many cases in which courts discuss potential remedies where a prosecutor has a conversation with an already testifying witness without first seeking permission from the judge. A court has the discretion to strike a witness’s testimony in its entirety when it learns a prosecutor has had such an unauthorized conversation. (See People v Beckham, 142 AD3d 556, 557 [2d Dept 2016]; People v Pileggi, 116 AD3d 984, 985 [2d Dept 2014].) Where the record supports a finding that a prosecutor has significantly “coached” the witness during the recess, the remedy of striking the witness’s testimony may be the only fair remedy. (Cf. Neil, 289 AD2d 611, 615 [3d Dept 2001].) In one case, where the record disclosed that, despite the judge’s direction that a testifying witness not speak with the prosecutor or anyone else about his testimony, the prosecution “ ‘prepped’ [that witness] during the recess ... in order to ‘rehabilitate him on his cross-examination,’ ” including having the witness review prior testimony, the court properly granted the defense’s motion to set aside the guilty verdict because of this serious prosecutorial misconduct. (People v Robinson, 190 AD2d 697, 698 [2d Dept 1993].)
Despite this weighty authority, the People still argue it was their right to re-prep their witness because this court never ordered them not to do so. They opine that without such an order, they had every right to review with the witness the contents of his prior grand jury testimony as well as to seek an explanation for a potential inconsistency between testimony given during his direct examination and sworn statements contained in the witness’s “affidavit of merit.” This argument is specious. As noted, many cases since the Branch decision concern the very same issue facing this court—whether to impose a remedy for an unauthorized communication between a prosecutor and a witness after the witness has already begun testifying. Those cases are notice enough that such a practice creates a problem.
*509 Nonetheless, despite this serious error, the court denies the sole remedy sought by the defendant, which is to strike the witness’s testimony. In doing so, as in Neil, this court in no way means to condone or excuse the unilateral, unauthorized actions of the prosecutor. Re-prepping the witness before the reopened cross-examination placed at risk the truth seeking function served by ordering that examination in the first place. The fact that the prosecutor may not have directed the witness to any particular section of the previously undisclosed grand jury minutes cannot be considered mitigation; all the minutes were reviewed specifically because the prosecutor knew that the reopened cross-examination would concern those minutes. Equally troubling is the prosecutor’s unilateral decision to prep the witness about the "affidavit of merit.” The witness testified that the prosecutor told him he was being recalled to testify about the “affidavit of merit,” and asked the witness to provide an explanation for the potential discrepancy between it and his direct examination testimony blaming a potential inconsistency in the civil complaint on the attorney who drafted it. The explanation they say the witness provided in their office is strikingly similar to the explanation the witness provided during the reopened cross-examination. The People never disclosed they had this conversation when they moved to preclude defendant from cross-examining the witness about the document, and only confirmed that the witness was correct when he testified they reviewed the contents of the document with him before the reopened cross-examination in their letter submission. All of this smacks of an effort by the prosecutor to prepare the witness for potential impeachment, and to blunt the impact of the reopened cross-examination necessitated by their prior mistake.
As bad as this all is, the record, on the whole, does not support the sole remedy requested. A factor which weighs heavily in this decision is that this is a non-jury trial. A jury might have more trouble sifting through any information on this record about the significance of any coaching by the prosecutor prior to the reopened cross-examination. Moreover, defendant has not requested any fact-finding hearing about the extent of the conversations between the prosecutors and their witness prior to the reopened cross-examination, in order to explore the extent of that coaching. (See Neil, 289 AD2d at 615.) Counsel also chose not to develop any record through the witness himself about the extent of the coaching after the prosecutors *510 revealed they had at least reviewed the grand jury minutes with the witness just before the reopened cross-examination. As such, the record does not indicate just how far the conversation went, and how much coaching was actually involved. (See id.)
The fact remains that the People reviewed the same grand jury minutes with the witness at least twice before that witness originally took the stand, which was perfectly proper. This court cannot ascertain from this record how much influence the additional unauthorized review had on the witness’s testimony. Moreover, the witness acknowledged making every statement to the grand jury about which he was questioned by the defense. Counsel has identified no direct prejudice that relates to this part of the cross-examination about the grand jury testimony. There is information to allow defense counsel to make arguments about the veracity of the witness’s explanation about the circumstances of the creation of the “affidavit of merit” by his second attorney, and his decision to sign that document. Thus, on this record, at this non-jury trial, striking the testimony of the witness is unwarranted.
Finally, to the extent that the People believe that they must be ordered by a court not to have a substantive conversation with an already testifying prosecution witness, and that there is no rule requiring them to seek permission to do so, they are on notice from this court that henceforth, in any case being tried before this judge, they must seek such permission before having any such conversation.

 Although not an issue in this case, this court has serious concerns about prosecutors providing printed copies of grand jury testimony to witnesses to take home with them. Grand jury proceedings are secret and the minutes of a grand jury proceeding cannot be disclosed by a prosecutor absent a court order. A witness before the grand jury may reveal the substance of their testimony. (CPL 190.25 [4] [a].) It is also understood that a prosecutor may review a witness’s grand jury testimony with that witness prior to trial. (See Matter of Kinsella v Andreoli, 95 Misc 2d 915, 921 [Sup Ct, Onondaga County 1978].) However, a witness has no right to court-ordered disclosure of the actual minutes of their grand jury testimony. (Id. at 921-922.)