OPINION OF THE COURT
Chambers, J.
We hold in this case that the defendant’s consent to allow the trial court to substitute an alternate juror for a deliberating juror who was ill was not knowingly, intelligently, and voluntarily given. The trial court, which did not want to delay the proceedings any further, made the substitution upon the consent of counsel, before receiving the defendant’s consent, because there was a delay in bringing the defendant to the courthouse. Once the court obtained the defendant’s consent, it did so without revealing to him that the jury had, in fact, already reached a verdict. The withholding of this vital information from the defendant deprived him of the opportunity to make an intelligent, informed judgment as to whether to consent to the continuation of the trial with the alternate juror and receive the jury’s verdict, or to terminate the trial in a mistrial.
I.
On the third day of deliberations, a Monday, a juror informed the trial court that he would not be able to appear in court *16 because he was ill. The jury was dismissed for the day and directed to appear the next day. On that following day, on the advice of his doctor, the missing juror did not appear in court. The trial court indicated that it intended to substitute the sole remaining alternate juror for the missing juror because it did not want to delay the proceedings any longer. The trial court said that it would make the substitution ahead of receiving the written consent of the defendant, who had not arrived in court because of an administrative problem with the Nassau County Sheriffs Department. The People opposed the procedure, but defense counsel consented to it. The substitution was made at approximately 10:12 a.m. Twenty minutes later, before the defendant had even given his written consent to the substitution, the jury informed the trial court through a written note that it had reached a verdict. By the time the defendant arrived in court, after 11:00 a.m., the People had offered to dispose of the matter through a plea of guilty to a reduced charge. The trial court, however, said that it would not do anything until there was a decision on whether to substitute the alternate juror for the missing juror. Defense counsel and the defendant conferred, and the defendant provided his signed consent to the substitution. The trial court advised the defendant of the reason for the substitution, and explained that unless he agreed to the substitution, the trial could not continue and a mistrial would have to be declared. The trial court also told the defendant that the substitution had already been made, and that the jury had resumed their deliberations. The trial court further explained, however, that if the defendant did not agree to the substitution, then whatever deliberations that had occurred since the time of the substitution would be nullified. The defendant acknowledged that he understood, and he consented to the substitution, as well as the procedure that the trial court had employed in allowing the alternate juror to deliberate prior to the defendant’s consent. Finally, the trial court told the defendant that it was possible that the jury might already have made a decision, but it did not tell him that the jury had, in fact, already reached a verdict. Immediately after accepting the defendant’s written consent to the substitution, the trial court informed the parties that the jury had reached a verdict. The trial court afforded the defendant the opportunity to accept the People’s plea offer even though a verdict had been reached, but the defendant declined. The jury returned a verdict finding the defendant guilty of three of the six counts submitted to it.
*17 The defendant moved to set aside the verdict, based on the trial court’s failure to comply with the proper procedure for substituting an alternate juror under CPL 270.35. The trial court denied the motion. The defendant appeals, and we reverse.
n.
Although the defendant’s contention that his consent to the substitution of an alternate juror was not knowingly and intelligently given is unpreserved for appellate review, we nevertheless reach it in the exercise of our interest of justice jurisdiction (see People v McDuffie, 95 AD3d 1036, 1037 [2012]).
Initially, although the parties disagree as to whether CPL 270.35 (1) requires the trial court to first obtain the defendant’s written consent in open court before substituting an alternate juror for a deliberating juror, we need not decide that issue because, under the circumstances of this case, the defendant’s consent was not knowingly, intelligently, and voluntarily given.
“[T]he safeguards afforded by CPL 270.35 are identical to and coextensive with the constitutional requirements for valid waiver of a jury trial” (People v Page, 88 NY2d 1, 10 [1996]). The decision to allow an alternate juror to be substituted for a deliberating juror must be knowing, intelligent, and voluntary (see id. at 6, 9; People v McDuffie, 95 AD3d at 1037; People v Felton, 279 AD2d 331 [2001]; People v Woods, 238 AD2d 144 [1997]). The defendant must be “fully aware of the consequences of the choice he [or she] is making” (People v Duchin, 12 NY2d 351, 353 [1963]; see People v McDuffie, 95 AD3d at 1038; People v Davidson, 136 AD2d 66, 69 [1988]; see generally North Carolina v Alford, 400 US 25, 31 [1970]). In determining whether a defendant’s decision to consent to the substitution of an alternate juror for a deliberating juror is “made knowingly and understandingly, based on an intelligent, informed judgment” (People v Duchin, 12 NY2d at 353), a court is required to be “ ‘scrupulous,’ ” for at stake is the defendant’s “fundamental, constitutional right to trial by a jury of 12” (People v Page, 88 NY2d at 10, quoting People ex rel. Rohrlich v Follette, 20 NY2d 297, 300 [1967]; see Johnson v Zerbst, 304 US 458, 464 [1938], quoting Aetna Ins. Co. v Kennedy ex rel. Bogash, 301 US 389, 393 [1937] [“ ‘courts indulge every reasonable presumption against waiver’ of fundamental constitutional rights”]). Here, the defendant’s election to substitute the alternate juror for the deliberating juror was not based on an intelligent, informed *18 judgment. No matter how well-intentioned the trial court was in not disclosing the fact that the jury had already reached a verdict, due process required the trial court to disclose to the defendant all of the pertinent, material facts.
In Matter of Randall v Rothwax (161 AD2d 70 [1990], affd 78 NY2d 494 [1991]), a court officer, based on his observation of how the jurors interacted during dinner, relayed to the trial court that the jury was in favor of convicting the defendant by a vote of 10 to 2. In fact, the opposite was true; the jury was in favor of acquitting him by that margin. The trial court conveyed this misinformation to the defendant and, based on it, he decided to accept the trial court’s plea offer. When, following the defendant’s plea of guilty, discussions with the jury revealed that the trial court had conveyed inaccurate information to the defendant, the trial court vacated his plea of guilty. The New York County District Attorney’s Office sought to reprosecute the defendant. He petitioned the Appellate Division, First Department, pursuant to CPLR article 78 to prohibit the reprosecution. The First Department granted the petition, concluding that the plea had been induced by materially false information, was coerced and unintelligently entered and, thus, could not be permitted to stand.
In People v Finkle (262 AD2d 971 [1999]), at the outset of trial, the trial court obtained an ineffective waiver of the defendant’s right to a jury trial. On the date the trial court was set to deliver its verdict, it sought to obtain an effective waiver, but did not advise the defendant that he had an absolute right to a mistrial and a retrial before a jury. After obtaining the defendant’s waiver, the trial court rendered a verdict of guilty. On appeal, citing those omissions, among other things, the Appellate Division, Fourth Department, reversed the judgment and ordered a new trial.
Just as in Randall and Finkle, the defendant here was deprived of material information that led him down a path he might not have otherwise taken were full disclosure made. As the Court of Appeals recognized in People v Ryan (19 NY2d 100, 103 [1966]):
“[the] alternate juror entered the jury room after the eleven original jurors had sifted the evidence and, in all probability, already formulated their preliminary positions. Most important of all, each of the eleven jurors was aware of the outlooks and posi *19 tions of the others on the questions presented by the case, and sufficient time had elapsed so that surely the interplay of influences among and between the jurors had come into operation . . . [I]f deliberations had progressed to a stage where the original eleven were in substantial agreement, they were in a position to present a formidable obstacle to the alternate juror’s attempts to persuade and convince the eleven remaining original jurors.”
Significantly, this was the case here, for while the originally constituted jury had deliberated for nearly two days and twice told the trial court that it was deadlocked, 20 minutes after the alternate juror was substituted, the newly constituted jury informed the trial court that it had reached a verdict. The trial court’s failure to disclose to the defendant and his attorney that the jury had reached a verdict deprived the defendant of the opportunity, in consultation with counsel, to make an informed strategic decision as to whether to consent to the substitution or accept a mistrial (see generally Strickland v Washington, 466 US 668, 691 [1984]; People v Vargas, 88 NY2d 363, 377 [1996]; People v Sanchez, 252 AD2d 508, 509 [1998]). Moreover, it is clear from the record that the trial court was focused on moving matters along, by making the substitution prior to the defendant’s consent and by refusing to discuss the People’s plea offer with the defendant until he made a decision on the substitution of the juror. However, expediency does not justify abandoning standards of due process. Under these circumstances, it cannot be said that the defendant’s election to substitute the juror complies with the New York Constitution or CPL 270.35, or was made “knowingly and understandingly, based on an intelligent, informed judgment” (People v Nicholson, 35 AD3d 886, 889 [2006] [internal quotation marks omitted]). Consequently, the defendant is entitled to a new trial.
m.
Contrary to the defendant’s contention, the hearing court properly refused to suppress the identification testimony of a witness who called the 911 emergency telephone number, as her identification of the defendant at the scene of the crime was spontaneous and not the result of a police-arranged procedure (see People v Duuvon, 77 NY2d 541, 546 [1991]; People v Tlatelpa, 107 AD3d 1022 [2013]; People v Garcia, 201 AD2d 666 [1994]). Viewing the evidence in the light most favorable to the *20 prosecution (see People v Contes, 60 NY2d 620, 621 [1983]), we find that the evidence was legally sufficient to establish the defendant’s guilt beyond a reasonable doubt. Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15 [5]; People v Danielson, 9 NY3d 342 [2007]), we nevertheless accord great deference to the jury’s opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383, 410 [2004]; People v Bleakley, 69 NY2d 490, 495 [1987]). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (see People v Romero, 7 NY3d 633 [2006]).
The defendant’s remaining contentions have been rendered academic in light of our determination.
Accordingly, the judgment is reversed, as a matter of discretion in the interest of justice, and a new trial is ordered.
Rivera, J.E, Dillon and Hinds-Radix, JJ., concur.
Ordered that the judgment is reversed, as a matter of discretion in the interest of justice, and a new trial is ordered.