# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**611**
**KA 12-00137**
PRESENT: SMITH, J.P., PERADOTTO, LINDLEY, SCONIERS, AND WHALEN, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                             MEMORANDUM AND ORDER

ZORAIDA Y. FIGUEROA-NORSE, DEFENDANT-APPELLANT.

---

D.J. & J.A. CIRANDO, ESQS., SYRACUSE (BRADLEY E. KEEM OF COUNSEL), FOR DEFENDANT-APPELLANT.

CINDY F. INTSCHERT, DISTRICT ATTORNEY, WATERTOWN, FOR RESPONDENT.

---

Appeal from a judgment of the Jefferson County Court (Kim H. Martusewicz, J.), rendered January 17, 2012. The judgment convicted defendant, upon a jury verdict, of assault in the second degree and endangering the welfare of a child.

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

Memorandum: Defendant appeals from a judgment convicting her following a jury trial of assault in the second degree (Penal Law § 120.05 [8]) and endangering the welfare of a child (§ 260.10 [1]) based on life-threatening injuries she caused to her then eight-year-old foster child. The victim sustained a head injury that rendered her unconscious and required surgery to relieve pressure on her brain. She was in a coma for approximately one month and, at the time of trial, suffered paralysis on the left side of her body as a result of the injury. In addition, the victim sustained an injury to her abdomen that resulted in perforation of her digestive system and also required surgery. Due to the nature of her head injury, the victim could not recall how she was injured. Defendant was arrested after her brother informed the police that she had assaulted the child at his home.

Defendant contends that County Court erred in refusing to suppress statements she made to the deputy sheriff who questioned her at the hospital where the victim was taken. According to defendant, her statements were involuntary because they were not preceded by *Miranda* warnings. We reject that contention. "In determining whether a defendant was in custody for *Miranda* purposes, '[t]he test is not what the defendant thought, but rather what a reasonable [person], innocent of any crime, would have thought had he [or she] been in the defendant's position' " (*People v Kelley*, 91 AD3d 1318, 1318, *lv denied* 19 NY3d 963, quoting *People v Yukl*, 25 NY2d 585, 589, *cert denied* 400 US 851). Here, defendant was not restrained in any way, nor was she told that she had to answer the deputy sheriff's

questions. Although defendant was with the deputy sheriff at the hospital for approximately 10 hours, the questioning was not continuous, and defendant was given multiple breaks to use the bathroom and obtain beverages. Defendant declined an offer of food and had contact by cell phone with her brother and mother. At one point, defendant left the hospital on her own to retrieve items from her vehicle, and then returned to the hospital for further questioning. Moreover, the record of the *Huntley* hearing establishes that the questioning was investigatory rather than accusatory in nature (*see People v Smielecki*, 77 AD3d 1420, 1421, *lv denied* 15 NY3d 956; *People v Murphy*, 43 AD3d 1276, 1277, *lv denied* 9 NY3d 1008). Finally, defendant did not make any admissions and was allowed to go home after the interview was completed. Under the circumstances, we conclude that "a reasonable person in defendant's position, innocent of any crime, would not have believed that he or she was in custody, and thus *Miranda* warnings were not required" during the interview (*People v Lunderman*, 19 AD3d 1067, 1068, *lv denied* 5 NY3d 830; *see People v Jones*, 110 AD3d 1484, 1485, *lv denied* 22 NY3d 1157; *People v Zuke*, 87 AD3d 1290, 1291, *lv denied* 18 NY3d 887).

We likewise reject defendant's contention that the statements were involuntary within the meaning of CPL 60.45 (2) because her will was overborne by the length of the questioning and promises made to her by the deputy sheriff. Defendant was not coerced by the use or threatened use of physical force, and, even assuming, arguendo, that the deputy sheriff promised defendant that she could talk to the victim's surgeon if she cooperated with the police, as defendant testified at the *Huntley* hearing, we conclude that such promise did not create "a substantial risk that the defendant might falsely incriminate [herself]" (CPL 60.45 [2] [b] [i]). Indeed, as noted, defendant did not incriminate herself during the interview, and she was not arrested until five days later.

Defendant contends that she was deprived of her right to a proper jury because a prospective juror did not serve on the jury despite not having been struck or challenged. Because defendant did not object to the failure of that prospective juror to be seated on the jury, however, she failed to preserve that contention for our review (*see People v Hayes*, 71 AD3d 1477, *lv denied* 15 NY3d 751), and we decline to exercise our power to review that contention as a matter of discretion in the interest of justice (*see* CPL 470.15 [6] [a]). We note in any event that we perceive no prejudice to defendant arising from the failure of the prospective juror to be seated. As the Court of Appeals explained in a different context, "[e]ven if a juror is wrongly but not arbitrarily excused, the worst the court will have done in most cases is to have replaced one impartial juror with another impartial juror" (*People v Culhane*, 33 NY2d 90, 108 n 3; *see People v Arnold*, 96 NY2d 358, 362).

Defendant also failed to preserve for our review her contention that the court should have removed a seated juror who the court noticed had "nodded off" during the preliminary instructions and opening statements (*see* CPL 470.05 [2]). The court learned from the juror during a discussion at the bench that she was tired due to her diabetes medication, and the court decided to adjourn the trial until the next morning to allow the juror to get a good night's sleep. Although present for the discussion

at the bench with the juror, defense counsel did not object to the court's course of action or request that the juror be removed as "grossly unqualified" (CPL 270.35 [1]). We note that there is no indication in the record that the juror missed any of the evidence presented at trial, and we decline to exercise our power to review defendant's contention as a matter of discretion in the interest of justice (*see* CPL 470.15 [6] [a]).

We reject defendant's contention that the evidence is legally insufficient to support the conviction. Viewing the evidence in the light most favorable to the People, as we must (*see People v Contes*, 60 NY2d 620, 621), we conclude that " 'there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime[s] proved beyond a reasonable doubt' " (*People v Danielson*, 9 NY3d 342, 349; *see generally People v Bleakley*, 69 NY2d 490, 495). Defendant's brother testified that he observed defendant strike the victim in the face between five and seven times on the day in question. According to defendant's brother, the victim then ran from the house bleeding from the nose and mouth, and defendant later carried the victim back inside and placed her in the basement as a form of "timeout." When defendant's brother checked on the victim approximately 20 minutes later, the victim was unconscious. Contrary to defendant's contention, her brother's testimony was not "incredible as a matter of law," i.e., " 'unbelievable as a matter of law, manifestly untrue, physically impossible, contrary to experience, or self-contradictory' " (*People v Bush*, 107 AD3d 1581, 1582, *lv denied* 22 NY3d 954; *see People v Harris*, 56 AD3d 1267, 1268, *lv denied* 11 NY3d 925). We note in addition that defendant admitted at trial that she lied to the deputy sheriff when she said that the victim had fallen out of her arms and landed on the driveway, and that she told the same lie to several other people, including the victim's paternal grandfather, the victim's psychologist, and a social worker whom defendant phoned while driving the victim to the hospital. Defendant also admittedly lied when she told numerous people that the victim consumed some type of rancid liquid and had been vomiting all day.

Viewing the evidence in light of the elements of the crimes as charged to the jury (*see Danielson*, 9 NY3d at 349), we further conclude that the verdict is not against the weight of the evidence (*see generally Bleakley*, 69 NY2d at 495). Although a different verdict would not have been unreasonable, it cannot be said that the jury failed to give the evidence the weight it should be accorded (*see generally id.*). The jury was entitled to credit the testimony of defendant's brother over that of defendant, and we afford great deference to the jury's credibility determinations. "[T]hose who see and hear the witnesses can assess their credibility and reliability in a manner that is far superior to that of reviewing judges who must rely on the printed record" (*People v Lane*, 7 NY3d 888, 890; *see People v Roberts*, 111 AD3d 1308, 1309, *lv denied* 23 NY3d 967; *People v Allen*, 93 AD3d 1144, 1147, *lv denied* 19 NY3d 956).

Even assuming, arguendo, that we agree with defendant that the court erred in denying her request to admit in evidence a statement given to the police by a neighbor of defendant's brother who had died prior to trial

(*see generally People v Robinson*, 89 NY2d 648, 652-653), we conclude that such error is harmless.  The proof of guilt is overwhelming, and there is no reasonable possibility that defendant would have been acquitted if the statement had been admitted (*see generally People v Crimmins*, 36 NY2d 230, 237).

We have reviewed defendant's remaining contentions and conclude that they lack merit.

Entered:  August 8, 2014                          Frances E. Cafarell
                                                  Clerk of the Court