# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1113**

**KA 14-01317**

PRESENT: SCUDDER, P.J., SMITH, CARNI, LINDLEY, AND VALENTINO, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                             MEMORANDUM AND ORDER

DEMETRIUS A. HUFF, DEFENDANT-APPELLANT.

---

KATHRYN FRIEDMAN, BUFFALO, FOR DEFENDANT-APPELLANT.

DEMETRIUS A. HUFF, DEFENDANT-APPELLANT PRO SE.

FRANK A. SEDITA, III, DISTRICT ATTORNEY, BUFFALO (NICHOLAS T. TEXIDO OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Supreme Court, Erie County (Russell P. Buscaglia, A.J.), rendered January 3, 2014. The judgment convicted defendant, upon a jury verdict, of murder in the second degree.

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

Memorandum: On appeal from a judgment convicting him following a jury trial of murder in the second degree (Penal Law § 125.25 [1]), defendant contends that Supreme Court erred in denying his motion to suppress physical evidence seized from the attic of the home where he resided with his grandmother. We reject that contention. Following a hearing, the court credited the testimony of a detective that the grandmother had voluntarily consented to the search. Although the detective was unable to obtain a written consent to the search, "[i]t is well settled that consent can be established by conduct" (*People v Sinzheimer*, 15 AD3d 732, 734, *lv denied* 5 NY3d 794). According to the detective who testified at the hearing, the grandmother, who had a master's degree, was pleasant and cooperative, she let the detectives into the house, and she led them directly to the attic and unlocked the door to the attic for them. Only after the inculpatory evidence was found did the grandmother become aggravated and refuse to sign the consent form. Although the grandmother testified that she let the detectives into her home only after they told her they had a search warrant, the testifying detective denied telling the grandmother that they had a search warrant.

The court credited the testimony of the detective, and " '[i]t is well settled that [t]he suppression court's credibility determinations . . . are granted deference and will not be disturbed unless unsupported by the record' " (*People v May*, 100 AD3d 1411, 1412, *lv*

*denied* 20 NY3d 1063).  Crediting such testimony, we conclude that the People met their burden of establishing " 'that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied' by the actions of the law enforcement authorities" (*People v Quagliata*, 53 AD3d 670, 671, *lv denied* 11 NY3d 834, quoting *Schneckloth v Bustamonte*, 412 US 218, 248).  The grandmother manifested her consent to the search by her willingness to cooperate and her conduct in leading the officers to the attic and unlocking the door thereto (*see People v McCray*, 96 AD3d 1480, 1481, *lv denied* 19 NY3d 1104; *People v Allah*, 54 AD3d 632, 632, *lv denied* 12 NY3d 755; *Quagliata*, 53 AD3d at 672; *cf. People v McFadden*, 179 AD2d 1003, 1004, *appeal dismissed* 79 NY2d 996).

Defendant further contends that the court erred in refusing to suppress his statements to the police.  At the suppression hearing, a detective testified that defendant was read and waived his *Miranda* rights before the initial interview.  Although the actual card could not be located and thus was not presented at the hearing, the court credited the detective's unrebutted testimony, and such a credibility determination is entitled to great deference (*see People v Prochilo*, 41 NY2d 759, 761).  "[T]he warnings given by this experienced [detective] were adequate and fully conveyed to defendant his rights.  No more is required" (*People v Vega*, 225 AD2d 890, 891, *lv denied* 88 NY2d 943).

We reject defendant's contention that his statements were not voluntarily given because he was 17 years old at the time of the interview, allegedly suffered from a learning disability and was unaccompanied by his grandmother to the interview.  "A court generally must look to the totality of the circumstances to determine the voluntariness of an inculpatory statement . . . 'The factors to be examined in determining the totality of the circumstances surrounding a defendant's confession include the duration and conditions of detention, the attitude of the police toward the defendant, and the age, physical state, and mental state of the defendant' " (*People v Brown*, 113 AD3d 785, 785, *lv denied* 23 NY3d 1018; *see People v Kemp*, 266 AD2d 887, 888, *lv denied* 94 NY2d 921).  In this case, defendant "was legally an adult . . . Thus, there was no requirement that defendant's [guardian] be present during the police questioning" (*People v Lewis*, 277 AD2d 1010, 1011, *lv denied* 96 NY2d 736).  Moreover, there was no evidence that defendant was isolated from his grandmother as a result of "official deception or trickery" (*People v Salaam*, 83 NY2d 51, 55).  Although defendant contends that he suffered from a learning disability, the grandmother testified at the hearing that defendant was able to complete age-appropriate school work.  We thus conclude that "there is insufficient evidence in the record to support [defendant's] assertion that [he] had [a learning disability] or subnormal intelligence and, therefore, could not knowingly or intelligently waive his rights" (*People v Herr*, 203 AD2d 927, 928, *affd* 86 NY2d 638).

Defendant also challenges the voluntariness of the statement based on the seven-hour interrogation that preceded his first

statement.  We conclude, however, that the duration of the interview did not render the resulting statement involuntary.  Defendant was given breaks to use the bathroom and smoke cigarettes, and he was offered food and beverages (*see People v Clyburn-Dawson*, 128 AD3d 1350, 1351; *People v Figueroa-Norse*, 120 AD3d 913, 914, *lv denied* 25 NY3d 1071; *People v Collins*, 106 AD3d 1544, 1545, *lv denied* 21 NY3d 1072).  We thus conclude "that the People proved beyond a reasonable doubt that defendant's statements were voluntary" (*Kemp*, 266 AD2d at 888).

Contrary to defendant's further contention, we conclude that the court properly granted the People's motion to vacate defendant's earlier plea of guilty to a reduced charge of manslaughter in the first degree.  In accordance with that earlier plea agreement, defendant had agreed to testify truthfully against the codefendant in exchange for being permitted to plead guilty to the reduced charge.  After defendant entered his plea and was called to testify at the codefendant's trial, however, defendant denied all the facts that he had previously admitted in his statements and plea colloquy.  It is well settled that "[c]onditions agreed upon as part of a plea bargain are generally enforceable, unless violative of statute or public policy" (*People v Hicks*, 98 NY2d 185, 188).  We reject defendant's contention that he substantially complied with the terms of the plea agreement.  "Whether a defendant has in fact performed his end of a plea bargain is not tested by the defendant's subjective interpretation but rather[, it is tested] by an objective interpretation of the agreement" (*People v Cuadrado*, 161 AD2d 232, 233, *lv denied* 76 NY2d 855) and, here, there can be no legitimate dispute that defendant failed to perform his end of the bargain when he refused to testify truthfully at the codefendant's trial (*see e.g. People v Brennan*, 62 AD3d 1167, 1168, *lv denied* 13 NY3d 794; *People v Dunton*, 10 AD3d 808, 808, *lv denied* 4 NY3d 830; *Cuadrado*, 161 AD2d at 233).  Where, as here, a defendant has materially breached the plea agreement, the court "ha[s] the authority to vacate the [defendant's] guilty plea" (*Matter of Klein v Cowhey*, 161 AD2d 643, 643; *see People v Aponte*, 212 AD2d 157, 161), and the matter may proceed to trial on the original indictment (*see generally People v Bartley*, 47 NY2d 965, 966).

Contrary to defendant's contention, the testimony of the jailhouse informant was not incredible as a matter of law (*see People v Carr*, 99 AD3d 1173, 1174, *lv denied* 20 NY3d 1010), i.e., "manifestly untrue, physically impossible, contrary to experience, or self-contradictory" (*People v Ponzo*, 111 AD3d 1347, 1348 [internal quotation marks omitted]; *see People v Errington*, 121 AD3d 1553, 1555, *lv denied* 25 NY3d 1163).

Defendant contends that the evidence is legally insufficient to support the conviction of intentional murder.  To the extent that defendant contends that there was no evidence of his intent to kill the victim and no evidence that he inflicted the fatal injuries, those contentions have not been preserved for our review (*see People v Gray*, 89 NY2d 10, 19; *People v Broadnax*, 52 AD3d 1306, 1307, *lv denied* 11

NY3d 830). In any event, those contentions lack merit. Here, defendant's intent to kill may be inferred from the evidence that he stabbed the victim 10 times and held the victim down while others stabbed him (*see People v Pearson*, 93 AD3d 1343, 1343, *lv denied* 19 NY3d 866; *People v Moore*, 184 AD2d 1042, 1042, *lv denied* 80 NY2d 907). Although there is no evidence that defendant inflicted the fatal stab wounds, he was charged as an accessory, and the jury was instructed on accessorial liability. As we noted in the case of the codefendant (*People v Nafi*, ___ AD3d ___ [Oct. 2, 2015]), "[a]ccessorial liability requires only that defendant, acting with the mental culpability required for the commission of the crime, intentionally aid another in the conduct constituting the offense" (*People v Chapman*, 30 AD3d 1000, 1001, *lv denied* 7 NY3d 811 [internal quotation marks omitted]).

With respect to defendant's remaining challenges to the sufficiency of the evidence, we conclude that the evidence, when viewed in the light most favorable to the People, is legally sufficient to support the conviction (*see People v Contes*, 60 NY2d 620, 621; *see generally People v Bleakley*, 69 NY2d 490, 495). Moreover, viewing the evidence in light of the elements of the crime as charged to the jury (*see People v Danielson*, 9 NY3d 342, 349), we conclude that an acquittal would have been unreasonable, and thus that the verdict is not against the weight of the evidence (*see id*. at 348; *Bleakley*, 69 NY2d at 495).

Entered: November 13, 2015                    Frances E. Cafarell
                                              Clerk of the Court