# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**366**

**KA 11-01944**

PRESENT: CENTRA, J.P., CARNI, DEJOSEPH, CURRAN, AND SCUDDER, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                      MEMORANDUM AND ORDER

JAQUAN CLARK, ALSO KNOWN AS DEVONTE HAMPTON,
DEFENDANT-APPELLANT.

---

MARK D. FUNK, ROCHESTER, FOR DEFENDANT-APPELLANT.

SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (LEAH MERVINE OF
COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Supreme Court, Monroe County
(Francis A. Affronti, J.), rendered December 1, 2009.  The judgment
convicted defendant, upon a jury verdict, of murder in the second
degree (eight counts) and criminal possession of a weapon in the
second degree (two counts).

It is hereby ORDERED that the judgment so appealed from is
unanimously affirmed.

Memorandum:  Defendant appeals from a judgment convicting him
following a jury trial of eight counts of murder in the second degree
(Penal Law § 125.25 [1], [3]) and two counts of criminal possession of
a weapon in the second degree (§ 265.03 [1] [b]; [3]).  The conviction
arose from the murder of four people in late December 2008; one victim
was killed on December 23 on Skuse Street in Rochester, and three
victims were killed on December 26 at a home on Bernice Street in
Rochester.  The 17-year-old defendant was arrested on an unrelated
warrant on January 6, 2009 and was charged with the two weapon
possession counts at that time.  It is undisputed that the weapon that
defendant possessed on January 6, 2009 was not connected to any of the
murders.  We agree with defendant that Supreme Court erred in denying
that part of his omnibus motion seeking severance of the weapon
possession counts from the murder counts because "proof of defendant's
commission of the [murders] was not admissible to prove defendant's
guilt of criminal possession of the [weapon] or vice versa.  The
incidents were unrelated in time and place and completely dissimilar
in nature" (*People v Gadsden*, 139 AD2d 925, 926).  We nevertheless
conclude that, because the evidence of the murder counts is
overwhelming, there is not a significant probability that defendant
would have been acquitted of any of the murder counts if the evidence
regarding the weapon possession counts had not been before the jury
(*see People v Crimmins*, 36 NY2d 230, 241-242; *cf. Gadsden*, 139 AD2d at

926).

We reject defendant's contention that the court erred in refusing to suppress statements he made to the police during the 26-hour period of videotaped interrogation.  It is axiomatic that the length of the interrogation period "does not, by itself, render the statement[s] involuntary" (*People v Weeks*, 15 AD3d 845, 847, *lv denied* 4 NY3d 892).  Instead, we must view " 'the totality of the circumstances surrounding the interrogation' " (*People v Knapp*, 124 AD3d 36, 41).  The detective ascertained defendant's date of birth, that he had completed the 10th grade and was obtaining his GED, that he could read and write, that he was not under the influence of alcohol or marijuana, and that he had never before been read his *Miranda* rights.  The detective "did not restrict himself to a mere reading of the rights from a card . . . [but] [i]nstead . . . described the rights in more detail and simpler language, verifying that defendant understood [them]" (*People v Williams*, 62 NY2d 285, 288).  We conclude that the court properly determined that defendant voluntarily waived his *Miranda* rights (*see People v Huff*, 133 AD3d 1223, 1224).  We further conclude that his will was not overborne by coercive police tactics (*cf. People v Guilford*, 21 NY3d 206, 212; *Knapp*, 124 AD3d at 47-48).  Contrary to defendant's contention, the tactics used by the police, i.e., telling defendant that they thought he was a "good kid," stating that he would feel better when he told the truth, and challenging the inconsistencies in his statement with the evidence, were not improper or unusual where, as here, there is no evidence that defendant was of subnormal intelligence or susceptible to suggestion (*cf. Knapp*, 124 AD3d at 47-48; *see generally People v Johnson*, 52 AD3d 1286, 1287, *lv denied* 11 NY3d 738).  Indeed, defendant never admitted that he committed the offenses, and he changed his version of events regarding the murders at the Bernice Street home, admitting that he was present when the murders were committed by someone else, only when confronted with fingerprint evidence establishing that he was at the home.  Defendant thereafter admitted that he was present at the Skuse Street murder when he implicated another person for that murder.  He explained that it was that other person who also had committed the murders at the Bernice Street home, and not the three people whom he initially implicated, but whom the police established had alibis for the time those murders were committed.  The record establishes that defendant was provided with food, water, cigarettes, and bathroom breaks throughout the period (*see Huff*, 133 AD3d at 1225; *People v Collins*, 106 AD3d 1544, 1545, *lv denied* 21 NY3d 1072; *cf. Guilford*, 21 NY3d at 210; *People v Anderson*, 42 NY2d 35, 40).  The record further establishes that there were two breaks in the interrogation, approximately six and one-half hours and five hours long, respectively, when the police were pursuing leads and that defendant slept during those breaks (*see People v McWilliams*, 48 AD3d 1266, 1267, *lv denied* 10 NY3d 961).  Moreover, we note that the length of the interrogation was in large part owing to "the nature of the crime[s] and defendant's conflicting and constantly changing stories to the police," which the police investigated and attempted to verify (*People v Steward*, 256 AD2d 1147, 1147, *lv denied* 93 NY2d 879).  Although defendant made four requests to make a telephone call throughout the period, it was not until the end of the period of

interrogation that he requested to call his mother.  A 17-year-old defendant is considered an adult for the purpose of criminal prosecution (*see generally People v Martin*, 39 AD3d 1213, 1213, *lv denied* 9 NY3d 878), and defendant does not contend that the police engaged in " 'deception or trickery' " to isolate him from his family, nor does the record support a conclusion that the police did so (*People v Harvey*, 70 AD3d 1454, 1455, *lv denied* 15 NY3d 570; *cf. People v Townsend*, 33 NY2d 37, 42).

Defendant failed to preserve for our review his contentions regarding circumstances surrounding the in-court identification of defendant by an 18-year-old witness, i.e., that the witness should not have been permitted to identify him and that the prosecutor and the court engaged in misconduct (*see* CPL 470.05 [2]).  In any event, those contentions lack merit.  The inability of a witness to make an unequivocal pretrial identification goes to the weight of the identification, not its admissibility (*see People v Parks*, 257 AD2d 636, 637, *affd* 95 NY2d 811).  With respect to the allegations of misconduct, we note that, following the subject witness's identification of defendant as the person she saw with two of the victims on the night of the crimes at the home on Bernice Street, the court directed the prosecutor to speak to the witness because she had not complied with the court's repeated instructions to speak more loudly.  Whether to permit contact between the prosecutor and a witness in the middle of the witness's testimony "falls within the broad discretion allowed a trial court in its management of a trial" (*People v Branch*, 83 NY2d 663, 667).  We reject defendant's contention that the prosecutor's statements to the witness were improper.  Contrary to defendant's contention, the court's efforts to clarify the witness's testimony did not give "any impression with respect to its own view of the 'credibility of the testimony of [the] witness or the merits of [her identification]' " (*People v Blair*, 94 AD3d 1403, 1404, *lv denied* 19 NY3d 971).

Finally, contrary to defendant's contention, he was not deprived of effective assistance of counsel based upon counsel's consent to substitute an alternate juror for a juror who, because of illness, was discharged shortly after deliberations began, rather than seeking a mistrial to which he would have been entitled (*see* CPL 270.35 [1]).  It is well established that "[a]llowing a defendant to decide whether deliberations should continue . . . provides the accused with more options . . . For example, if a defendant believes that a favorable outcome is possible, he may prefer to consent to deliberations . . . But if the defendant believes that he is more likely to prevail at a retrial, the constitution ensures that this remedy is available to a defendant as well" (*People v Gajadhar*, 9 NY3d 438, 447-448).  "[I]n order to prevail on a claim of ineffective assistance of counsel based on a single error or omission, a defendant must demonstrate that the error was 'so egregious and prejudicial' as to deprive defendant of a fair trial" (*People v Cummings*, 16 NY3d 784, 785, *cert denied* ___ US ___, 132 S Ct 203), and that is not the case here.  Although defendant correctly contends that some of the witnesses may be unavailable to testify at a second trial, the prosecution could nevertheless use the transcript of the testimony from the first trial in its case-in-chief

in a retrial (*see* CPL 670.10 [1]).  Inasmuch as there was a cogent defense that focused on the lack of credibility, and a motive to lie, of several of the prosecution witnesses, we conclude that there was a reasonable and legitimate basis for counsel's strategic decision to go forward with the deliberations with jurors who saw and heard the witnesses (*see generally People v Benevento*, 91 NY2d 708, 712-713).  Finally, we reject defendant's contention that his consent to substitute a juror was not knowing, intelligent, and voluntary.  The record establishes that "the court ascertained that defendant conferred with his counsel prior to signing a written consent in open court in conformance with CPL 270.35 [1]" (*People v Felton*, 279 AD2d 331, 331, *lv denied* 96 NY2d 799; *cf. People v Canales*, 121 AD3d 14, 17; *People v Teatom*, 91 AD3d 1025, 1026).  To the extent that defendant's contention " 'implicates his relationship with his trial attorney and is to be proved, if at all, by facts outside the trial record,' " it must be raised by way of a motion pursuant to CPL 440.10 (*Felton*, 279 AD2d at 331).

Entered:  May 6, 2016                          Frances E. Cafarell
                                               Clerk of the Court