People v Weaver (2018 NY Slip Op 08715)





People v Weaver


2018 NY Slip Op 08715


Decided on December 20, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 20, 2018

108909

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent
v
JAUSHI'IR WEAVER, Appellant.

Calendar Date: October 18, 2018

Before: Egan Jr., J.P., Clark, Mulvey, Aarons and Pritzker, JJ.


Paul J. Connolly, Delmar, for appellant.
P. David Soares, District Attorney, Albany (Emily A. Schultz of counsel), for respondent.



MEMORANDUM AND ORDER
Mulvey, J.
Appeal from a judgment of the County Court of Albany County (Herrick, J.), rendered May 31, 2016, upon a verdict convicting defendant of the crimes of murder in the second degree and criminal possession of a weapon in the second degree.
During the early morning hours of May 5, 2015, defendant, then age 16, and codefendant Mark Bowman shot into a crowd of people gathered outside of a residential building in the City of Albany in an effort to avenge the murder of Bowman's cousin. Two of the individuals present in the group were struck and injured, and a third victim was fatally wounded by a bullet forensically determined to have been fired from the gun found upon defendant when he was apprehended by police just minutes later. Defendant and Bowman, along with their get-away driver, were thereafter arrested and charged by indictment with various crimes in connection with the shooting. Following a joint Huntley hearing, County Court denied defendant's motion to suppress the statements he made to police and severed his case from that of his codefendants. At the ensuing jury trial, defendant raised the affirmative defense of duress and testified in his own defense. Defendant admitted that he repeatedly fired the gun in the direction of where the group of people were gathered, but claimed that Bowman had directed him to do so and threatened to shoot him and his family if he did not do as he was told. The jury rejected the duress defense and convicted defendant of murder in the second degree and criminal possession of a weapon in the second degree. Sentenced to 22 years to life in prison for the murder conviction and a concurrent 15-year prison term for the weapon conviction, defendant now appeals.
Defendant first alleges the existence of unspecified defects in the grand jury proceeding. As the sufficiency of the trial evidence has not been challenged, it is presumed legally sufficient and, as a result, any "challenges to the grand jury proceeding are precluded to the extent they involve the sufficiency of the evidence presented or the instructions given to the grand jury" (People v Secor, 162 AD3d 1411, 1413 [2018] [internal quotation marks and citations omitted], [*2]lv denied 32 NY3d 941 [2018]; see People v Smith, 4 NY3d 806, 808 [2005]; People v Roulhac, ___ AD3d ___, ___, 86 NYS3d 336, 338 [2018]; People v Robinson, 156 AD3d 1123, 1128 n 8 [2017], lv denied 30 NY3d 1119 [2018]). Our review of the grand jury minutes otherwise fails to reveal the existence of any defects that impaired the integrity of the grand jury or prejudiced defendant so as to warrant the drastic remedy of dismissal of the indictment (see People v Wisdom, 23 NY3d 970, 972 [2014]; People v Secor, 162 AD3d at 1413; People v Fields, 160 AD3d 1116, 1118 n 1 [2018], lvs denied 31 NY3d 1116, 1120 [2018]).
Defendant next claims that County Court erred in denying his application, made on the eve of trial, for funds to hire a psychological expert to examine him and testify relative to his duress defense. To succeed on a motion for funds pursuant to County Law § 722-c, it was incumbent upon defendant "to show that he was indigent, that the service was necessary to his defense and, if the compensation he sought exceeded the statutory limit of $1,000, that extraordinary circumstances justified the expenditure" (People v Clarke, 110 AD3d 1341, 1342 [2013], lv denied 22 NY3d 1197 [2014]; see People v Brand, 13 AD3d 820, 821 [2004], lv denied 4 NY3d 851 [2005]). Here, defendant's application sought funds for the purpose of securing expert testimony to explain why he "would succumb to the pressure of an older, more dominant male in his peer group." Although such testimony may well have been helpful to defendant's duress defense, he failed to demonstrate a "distinct necessity" for the assistance of an expert to aid the jury in resolving that issue (People v Dove, 287 AD2d 806, 807 [2001]; accord People v Clarke, 110 AD3d at 1342; see People v Casiano, 40 AD3d 528, 529 [2007], lv denied 9 NY3d 990 [2007]; People v Gallow, 171 AD2d 1061, 1062-1063 [1991], lv denied 77 NY2d 995 [1991]; People v Wright, 161 AD2d 743, 743 [1990]; cf. People v Cronin, 60 NY2d 430, 433 [1983]). Moreover, defendant was able to present his duress defense through his own trial testimony and to expound upon it through his cross-examination of witnesses and closing arguments to the jury (see People v Gallow, 171 AD2d at 1062-1063; compare People v Rodriguez, 6 AD3d 814, 817-818 [2004]). We further note that "the application made no claim or showing of extraordinary circumstances, nor did it indicate whether the compensation sought would exceed $1,000 or detail the time to be spent" by the expert (People v Clarke, 110 AD3d at 1342; see People v Dearstyne, 305 AD2d 850, 852-853 [2003], lv denied 100 NY2d 593 [2003]; People v Dove, 287 AD2d at 807). In light of the foregoing, we cannot say that County Court abused its discretion in denying defendant's application.
We are similarly unconvinced that County Court erred in refusing to suppress certain statements that defendant made to police during his recorded interrogation. Defendant does not dispute that he validly waived his Miranda rights at the outset of the interview, but contends that his waiver was rendered ineffective by subsequent police conduct during the course of the interrogation. Having failed to raise this specific argument in his motion papers or at the Huntley hearing as a ground for suppression, defendant did not preserve the issue for our review (see People v Schluter, 136 AD3d 1363, 1363 [2016], lv denied 27 NY3d 1138 [2016]; People v Johnson, 117 AD3d 637, 638 [2014], lv denied 26 NY3d 930 [2015]). In any event, the Court of Appeals has rejected the "novel theory" now advanced by defendant — that is, "that the validity of the [Miranda] waiver [could be] vitiated by police misconduct that occurred after the waiver" (Matter of Jimmy D., 15 NY3d 417, 424 [2010]). Where, as here, a defendant's "Miranda rights were validly waived and never reinvoked, the issue is voluntariness, not waiver" (id.).[FN1]
Whether defendant's statements were voluntary — an issue that was properly preserved — is to be determined "by examining the totality of the circumstances under which [they were] obtained" (People v Moore, 162 AD3d 1123, 1126 [2018]; see Dickerson v United States, 530 US 428, 434 [2000]; People v Guilford, 21 NY3d 205, 208 [2013]). Upon our review of the recorded interview and the testimony adduced at the Huntley hearing, we conclude that the People satisfied their burden of demonstrating the voluntariness of defendant's statements beyond a reasonable doubt (see People v Thomas, 22 NY3d 629, 641 [2014]; People v Cummings, 157 AD3d 982, 985 [2018], lv denied 31 NY3d 982 [2018]).
The circumstances and atmosphere of the interview fail to demonstrate involuntariness. Although defendant was detained for approximately 16½ hours, that fact, without more, does not render his statements involuntary (see People v Jin Cheng Lin, 26 NY3d 701, 723-725 [2016]; People v Tarsia, 50 NY2d 1, 12-13 [1980]; People v Case, 150 AD3d 1634, 1638 [2017]; People v McWilliams, 48 AD3d 1266, 1267 [2008], lv denied 10 NY3d 961 [2008]). The questioning was intermittent, with several lengthy breaks that afforded defendant the opportunity to sleep in solitude, and defendant was provided with food and water and permitted to use the restroom (see People v Sands, 164 AD3d 613, 614 [2018], lv denied ___ NY3d ___ [Oct. 26, 2018]; People v Clark, 139 AD3d 1368, 1369 [2016], lvs denied 28 NY3d 928, 930 [2016]; People v DeCampoamor, 91 AD3d 669, 670 [2012], lv denied 18 NY3d 993 [2012]). No threats were uttered, and defendant was not subjected to physical abuse or mistreatment. As defendant was legally an adult, "there was no requirement that his family be present during police questioning" (People v Page, 225 AD2d 831, 833 [1996], lv denied 88 NY2d 883 [1996]; see People v Wells, 18 AD3d 1022, 1024 [2005], lv denied 5 NY3d 796 [2005]; People v Insonia, 277 AD2d 819, 820 [2000], lv denied 96 NY2d 735 [2001]), and there is no evidence that defendant was isolated from his mother as a result of "official deception or trickery" (People v Salaam, 83 NY2d 51, 55 [1993]; see People v Huff, 133 AD3d 1223, 1225 [2015], lv denied 27 NY3d 999 [2016]; People v Harvey, 70 AD3d 1454, 1455 [2010], lv denied 15 NY3d 750 [2010]; People v Insonia, 277 AD2d at 820). Further, the tactics used by the detectives in encouraging defendant to "be a man" and to "do the right thing" cannot be deemed improper "where, as here, there is no evidence that defendant was of subnormal intelligence or susceptible to suggestion" (People v Clark, 139 AD3d at 1369; accord People v Deitz, 148 AD3d 1653, 1654 [2017], lv denied 29 NY3d 1125 [2017]).
Nor are we persuaded that certain assurances of confidentiality by the police during the course of the interrogation rendered defendant's ensuing statements involuntary under either constitutional (see CPL 60.45 [2] [b] [ii]; Arizona v Fulminante, 499 US 279 [1991]) or statutory standards (see CPL 60.45 [2] [b] [i]). A little more than an hour into the interview, defendant admitted to detectives that he fired the gun into the crowd of people gathered across the street. The questioning that followed was aimed at ascertaining the identity of the other shooter, who was depicted on video surveillance taken from a City-owned pole camera. During the course of that questioning, one of the detectives stated to defendant that "this conversation is in this room." This detective made a similar assurance to defendant several hours later. He also made statements to the effect that the only way the conversation would "get around" is if defendant "r[a]n out of [the interrogation] room and [told] people"; that "as far as anyone else is concerned, the only way this conversation is going to get out there is if you go out and tell them"; and "do you think that [the other detective] and I are [going to] run out and tell people?" Eventually, defendant identified Bowman as the other shooter. He also made certain statements that he claims undermined his duress defense, including that he was neither afraid of nor threatened by Bowman prior to the shooting.
Despite defendant's protestations to the contrary, we find it apparent from the relevant portions of the interview that the statements regarding confidentiality related only to defendant's disclosure of the identity of the other shooter and his expressed fear that his revelation in that regard would be shared with other members of the community. As previously noted, the first such assurance of confidentiality was made after defendant freely admitted his role in the shooting, and the interrogation thereafter focused almost exclusively on eliciting the identity of the second shooter. During that time, defendant repeatedly expressed his fear of being labeled a [*3]"rat" and a "snitch" and, at one point, pleaded that he did not want to "make [his life] short" by it being "out there" that he gave up the other assailant or spoke with the police generally. The detective's express and implied assurances of confidentiality were plainly directed at — and, in all but one instance, were uttered on the heels of — these concerns voiced by defendant. There is nothing in this record to indicate that defendant — who did not testify at the Huntley hearing — believed or could reasonably have believed the detective's statements to mean that any and all statements he made would remain confidential for all purposes.
Even if the detective's statements could be viewed as an unqualified promise not to divulge any of defendant's subsequent statements, it cannot be said that such a promise gave rise to a "substantial risk that . . . defendant might falsely incriminate himself" (CPL 60.45 [2] [b] [i]). Defendant had already implicated himself in the murder, and there is no basis in this record to conclude that the detective's remarks would have deceived defendant into thinking that he would not be prosecuted or that he would receive lenient treatment (see Matter of Jimmy D., 15 NY3d at 424; People v Neal, 133 AD3d 920, 922 [2015], lvs denied 26 NY3d 1107, 1110 [2016]; People v Lugo, 60 AD3d 867, 868-869 [2009]). If anything, the assurances of confidentiality would have induced defendant to provide truthful statements, not false ones. Indeed, obtaining a truthful identification of the other shooter was the goal of the interrogation. Nor were the detective's assurances "so fundamentally unfair as to deny due process" (People v Tarsia, 50 NY2d at 11; see People v Fagan, 134 AD3d 1232, 1234 [2015]; People v Jaeger, 96 AD3d 1172, 1174 [2012], lv denied 19 NY3d 997 [2012]). "Deceptive police conduct may be unduly coercive, but only when it is so 'extreme' that it overbears a defendant's individual will" (People v Scaringe, 137 AD3d 1409, 1412 [2016], lv denied 28 NY3d 936 [2016], quoting People v Thomas, 22 NY3d at 642; see People v Jeremiah, 147 AD3d 1199, 1203 [2017], lvs denied 29 NY3d 1031, 1033 [2017]). The detective's statements regarding confidentiality were not so "highly coercive" as to nullify defendant's judgment or overbear his will (People v Thomas, 22 NY3d at 642; see Rogers v Richmond, 365 US 534, 544 [1961]; People v Jeremiah, 147 AD3d at 1203; People v Scaringe, 137 AD3d at 1412; People v Neal, 133 AD3d at 922; People v Pouliot, 64 AD3d 1043, 1044 [2009], lv denied 13 NY3d 838 [2009]; People v McLean, 59 AD3d 861, 863 [2009], affd 15 NY3d 117 [2010]). Considering the totality of the circumstances, the record supports the conclusion that defendant's statements resulted from his "free and unconstrained choice" (People v Thomas, 22 NY3d at 641 [internal quotation marks and citation omitted]; see People v Jeremiah, 147 AD3d at 1203; People v Cruz, 138 AD3d 1310, 1312 [2016]; People v Scaringe, 137 AD3d at 1412; People v Neal, 133 AD3d at 922).
Defendant also claims that County Court should have charged manslaughter in the second degree as a lesser included offense of second degree murder. However, he did not request that the court charge the lesser included offense or object to the jury charge as given (see People v Dorsey, 151 AD3d 1391, 1395 [2017], lv denied 30 NY3d 949 [2017]; People v Bost, 139 AD3d 1317, 1321 [2016]). Nor did County Court "expressly decide[]" the issue "in re[s]ponse to a protest by a party" (CPL 470.05 [2]). Instead, the record reflects that defense counsel was indecisive about whether he wanted manslaughter in the second degree to be submitted as a lesser included offense, and that County Court subsequently expressed its opinion that such a submission would be inappropriate under the facts of this case. Defendant did nothing to register any disagreement with that view. Accordingly, defendant's contention in this regard is both waived (see CPL 300.50 [1]; People v Young, 152 AD3d 981, 984 [2017], lv denied 30 NY3d 955 [2017]) and unpreserved for our review (see People v Turriago, 90 NY2d 77, 83-84 [1997]; People v Galeano, 111 AD3d 537, 537-538 [2015]; People v Alvarez, 51 AD3d 167, 180 [2008], lv denied 11 NY3d 785 [2008]; People v Jones, 265 AD2d 159, 160 [1999], lv denied 94 NY2d 824 [1999]). We decline defendant's request to take corrective action in the interest of justice, particularly given that "the decision to request or consent to the submission of a lesser included offense is often based on strategic considerations, taking into account a myriad of factors, including the strength of the People's case" (People v McGee, 20 NY3d 513, 519 [2013]; see People v Baker, 14 NY3d 266, 272-273 [2010]; People v Lane, 60 NY2d 748, 750 [1983]).
Defendant's remaining arguments are unavailing. With respect to his claim of ineffective assistance of counsel, defense counsel gave cogent opening and closing statements, [*4]made appropriate pretrial motions, registered timely objections, effectively cross-examined the People's witnesses, pursued a viable, albeit unsuccessful, duress defense and otherwise zealously represented defendant. Our review of the record as a whole confirms that, "despite any isolated and discrete shortcomings in counsel's performance," defendant received meaningful representation (People v Rivers, 152 AD3d 1054, 1058 [2017] [internal quotation marks, brackets, ellipsis and citation omitted], lv denied 30 NY3d 1063 [2017]; see People v Blake, 24 NY3d 78, 81 [2014]; People v Richardson, 162 AD3d 1328, 1332-1333 [2018]; People v Alberts, 161 AD3d 1298, 1305-1306 [2018], lv denied 31 NY3d 1114 [2018]). Finally, despite his youth and lack of an adult criminal history, we do not agree with defendant that his sentence was harsh and excessive. The sentence imposed was less than the maximum allowable and reflected the seriousness of defendant's conduct in shooting a gun into a crowd, which resulted in the senseless death of one individual and endangered the lives of numerous others. Considering all of the relevant circumstances, including the nature of the crimes for which defendant stands convicted and the devastating impact of his conduct on the victim and the victim's family, we find no abuse of discretion or extraordinary circumstances warranting a reduction of the sentence in the interest of justice (see People v Vanderhorst, 117 AD3d 1197, 1201-1202 [2014], lv denied 24 NY3d 1089 [2014]; People v Timmons, 78 AD3d 1241, 1245 [2010], lvs denied 16 NY3d 833, 837 [2011]).
Egan Jr., J.P., Clark, Aarons and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: We note that courts in other jurisdictions have embraced the theory advanced by defendant (see e.g. People v McKee, 2018 Mich App LEXIS 375, *31-35, 2018 WL 1072808, *11-12 [2018]; Leger v Commonwealth, 400 SW3d 745, 750-751 [Ky 2013]; Lee v State, 418 Md 136, 156-157, 12 A3d 1238, 1250-1251 [2011]; Spence v State, 281 Ga 697, 698-701, 642 SE2d 856, 857-858 [2007]; State v Pillar, 359 NJ Super 249, 262, 268, 820 A2d 1, 8, 11-12 [2003]; Hopkins v Cockrell, 325 F3d 579, 584-585 [5th Cir 2003], cert denied 540 US 1173 [2004]; State v Stanga, 2000 SD 129, ___, 617 NW2d 486, 490-491 [2000]). Our highest court has not, however, and we are therefore constrained to assess the admissibility of defendant's statements under the traditional voluntariness standard.